** PART II ** THERE IS NO QUESTION
THAT THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT APPLIES TO THE STATES BY VIRTUE OF THE FOURTEENTH AMENDMENT, AS "(THE FOURTEENTH AMENDMENT) (AMEND 14). HAS RENDERED THE LEGISLATURES OF THE STATES AS INCOMPETENT AS CONGRESS TO ENACT SUCH LAWS" RESPECTING THE ESTABLISHMENT OF RELIGION, LAWS THAT MIGHT ERODE THE SEPARATION BETWEEN CHURCH AND STATE. CANTWELL V. CONNECTICUT, 310 U.S. 1, 8 (1946). NOTHING PREVENTS A STATE FROM ADOPTING A MORE EXPLICIT, AND THUS MORE E XPANSIVE, APPROACH TO THE ESTABLISHMENT CLAUSE, SEE PRUNEVARD SHOPPING CENTER V. ROBINS, 447 U.S. 74, 81
(1980), AND IN OKLAHOMA THE SEPARATION BETWEEN CHURCH AND STATE HAS BEEN FORTIFIED BY THE EXPLICIT LANGUAGE OF ART. II, 5. AS THIS LANGUAGE IS MORE EXPLICIT, IT IS MORE RESTRICTIVE ON THE STATE. A.G. OPINION NO. 83-227, P. 424; SEE. E.A., BOARD OF EDUCATION V. ANTONE, 384 P.2D 911 (OKLA. 1963). BY VIRTUE OF ITS STRICTER LIMITATION ON ACTIONS THE STATE CAN TAKE TO SUPPORT OR FAVOR ONE RELIGION, THE STATE'S ESTABLISHMENT CLAUSE IN TURN FAVORS INDIVIDUAL LIBERTIES. CONSEQUENTLY, IT IS MORE LIKELY THAT THE COMMISSION'S PROPOSED ACTIONS WOULD RUN AFOUL OF THE STATE'S ESTABLISHMENT CLAUSE THAN VIOLATE THE FEDERAL ESTABLISHMENT CLAUSE. AN ANALYSIS OF OKLAHOMA CASE LAW WILL THUS PROVIDE A FRAMEWORK FOR DETERMINING WHETHER THE COMMISSION'S ACTION WOULD INFRINGE UPON THE STATE ESTABLISHMENT CLAUSE. ON SEVERAL OCCASIONS THE OKLAHOMA SUPREME COURT HAS HAD AN OPPORTUNITY TO CONSTRUE THE STATE ESTABLISHMENT CLAUSE IN CASES WHERE THE STATE HAS CONFERRED OR ATTEMPTED TO CONFER CERTAIN BENEFITS UPON PRIVATE RELIGIOUS INSTITUTIONS SUCH AS PAROCHIAL SCHOOLS. SEE BURKHARDT V. CITY OF ENID, 771 P.2D 608 (OKLA. 1989); ANTONE, 384 P.2D AT 911; GURNEY V. FERAUSON, 122 P.2D 1002 (OKLA. 1942), CERT. DENIED, 317 U.S. 588 (1942). IN BURKHARDT, THE COURT ANALYZED THE ISSUE OF WHETHER THE CITY OF ENID'S PLAN TO ASSIST PHILLIPS UNIVERSITY VIOLATED THE STATE ESTABLISHMENT CLAUSE. IN DECIDING THAT THE PLAN DID NOT, THE COURT REASONED: "(S)UFFICIENT CONSIDERATION WAS RECEIVED BY THE CITY SO THAT THE PLAN MAY NOT BE VIEWED MERELY AS A BENEFIT TO PHILLIPS." ID. AT 612. MORE IMPORTANTLY, FOR PURPOSES OF OUR ANALYSIS, THE COURT HELD THAT PHILLIPS BY DEFINITION WAS NOT A SECTARIAN INSTITUTION. ID. IN UPHOLDING ENID'S PLAN TO AID PHILLIPS, THE COURT IN BURKHARDT UTILIZED A DEFINITION OF SECTARIAN INSTITUTION FIRST ENUNCIATED IN GURNEY: "THE TERM 'SECTARIAN INSTITUTION' INCLUDES 'A SCHOOL OR INSTITUTION OF LEARNING WHICH IS OWNED AND CONTROLLED BY A CHURCH AND WHICH IS AVOWEDLY MAINTAINED AND CONDUCTED SO THAT THE CHILDREN OF PARENTS OF THAT PARTICULAR FAITH WOULD BE TAUGHT IN THAT SCHOOL THE RELIGIOUS TENETS OF THE CHURCH.'" BURKHARDT, 771 P.2D AT 612. IN GURNEY THE COURT STRUCK DOWN AS UNCONSTITUTIONAL UNDER THE STATE ESTABLISHMENT CLAUSE A STATE PROGRAM WHICH BUSSED STUDENTS TO PAROCHIAL SCHOOLS. ID. AT 1004. REJECTING THE ARGUMENT THAT THE PROGRAM BENEFITTED THE STUDENTS THEMSELVES AS OPPOSED TO FAVORING ONE SECT OVER ANOTHER, THE COURT REASONED THAT THE BUSSING PROGRAM WAS TANTAMOUNT TO MAINTAINING A SECTARIAN SCHOOL. ID. THE COURT IN BURKHARDT ALSO ADOPTED THE REASONING OF MURR OW INDIAN ORPHANS HOME V. CHILDERS, 171 P.2D 600 (OKLA. 1946), IN DISTINGUISHING BETWEEN INSTITUTIONS WITH SOME RELIGIOUS INFLUENCE AND SECTARIAN INSTITUTIONS: "IT IS NOT THE EXPOSURE TO RELIGIOUS INFLUENCE THAT IS TO BE AVOIDED; IT IS THE ADOPTION OF SECTARIAN PRINCIPLES OR THE MONETARY SUPPORT OF ONE OR SEVERAL OR ALL SECTS THE STATE MUST NOT DO." ID. AT 602; BURKHARDT, 771 P.2D AT 613. MOREOVER, THE COURT ESPECIALLY RECOGNIZED PHILLIPS' ATTEMPT TO SEPARATE THE GRADUATE SEMINARY FROM THE REST OF THE UNIVERSITY, AN ATTEMPT AIMED AT REDUCING PHILLIPS' IMAGE AS SECTARIAN. ONE OF THE MEASURES WAS A PLEDGE THAT "(P)UBLIC TRUST FUNDS MAY NEVER BE USED FOR ANY SECTARIAN PURPOSES INCLUDING THE TEACHING OF RELIGION." ID. AT 613. ACCORDING TO YOUR LETTER AND OUR TELEPHONE CONVERSATION OF SEPTEMBER 3, THE RESIDENCY PROGRAM IS NO LONGER OWNED OR CONTROLLED BY ORAL ROBERTS. THE ONLY SURVIVING VESTIGE IS THE NAME, IN HIS IMAGE. THE RESIDENTS ARE NOT BEING TAUGHT THE RELIGIOUS TENETS OF ANY PARTICULAR CHURCH. IF THERE IS ANY RELIGIOUS INFLUENCE, IT EMANATES FROM THE PROGRAM'S DIRECTOR HIMSELF WHO IS A HOLDOVER FROM THE ORAL ROBERTS PROGRAM. UNDER THESE CIRCUMSTANCES THE COMMISSION MIGHT BE FUNDING A PROGRAM WITH SOME RELIGIOUS INFLUENCE, BUT IT WOULD NOT, IN MY OPINION, BE SUPPORTING MONETARILY ANY PARTICULAR SECT. UNLESS IT CAN BE DEMONSTRATED THAT ORAL ROBERTS IS SOMEHOW ST ILL IN CONTROL OF THE PROGRAM AND THE RESIDENTS ARE BEING SCHOOLED IN THE BELIEFS OF THE SCHOOL'S RELIGION, IT IS MY OPINION THAT THE PROPOSED FUNDING WOULD NOT VIOLATE THE STATE ESTABLISHMENT CLAUSE. IF, HOWEVER, THE RESIDENTS WERE REQUIRED TO HOLD A PRAYER MEETING BEFORE MAKING ROUNDS, FOR INSTANCE, IN ACCORDANCE WITH ORAL ROBERTS POLICIES, THEN MY CONCLUSION WOULD BE DIFFERENT. IF THE PROPOSED FUNDING WOULD NOT VIOLATE THE STATE E STABLISHMENT CLAUSE, THEN IT WOULD MOST CERTAINLY NOT VIOLATE THE ESTABLISHMENT CLAUSE OF THE FEDERAL CONSTITUTION. THE OPINION LETTER OF AUGUST 21, 1991, FROM THOMAS WINTERS TO DR. CROUCH PROVIDES AN EXCELLENT DISCUSSION OF SUPREME COURT JURISPRUDENCE ON THE ESTABLISHMENT CLAUSE AND THE THREE PART TEST OF LEMON V. KURTZMAN, 403 U.S. 602 (1971). I WOULD ADOPT THE CONCLUSIONS MADE IN THIS LETTER, BUT I WOULD DISAGREE WITH THE ANALYSIS ONLY TO THE EXTENT THAT IT STANDS FOR THE PROPOSITION THAT THE FUNDING WOULD BE EXAMINED SOLELY UNDER THE FEDERAL CONSTITUTION.
(COOPER BRETT RO BINSON)